## JUDGMENT IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ASHLEY D. ADAMS**<br>    **Plaintiff,**<br><br>v.<br><br>**E-Z MART STORES, INC.,**<br>    **Defendant**<br><br>**E-Z MART STORES, INC.**<br>    **Third Party Plaintiff**<br>v.<br>**LSC VENTURES, INC., D/B/A PROCORE FUEL SOLUTIONS**<br>    **Third-Party Defendant** | Case No. 23-CV-278-RAW |

## ORDER

Before the court is the Defendant E-Z Mart Stores, Inc.'s Motion for Summary Judgment and Brief in Support [Dkt. No. 72]. Plaintiff Ashley Adams, the widow of Lonnie Adams filed suit against E-Z Mart, a gas station and convenience store, after Mr. Adams died while working in an underground tank sump on E-Z Mart's property. Plaintiff alleges that E-Z Mart negligently failed to fulfill various duties it owed her husband regarding the dangers posed by the sump and is therefore liable for his death. Because questions of fact remain regarding the extent to which different factors were the proximate cause of the decedent's death and how Mr. Adams' awareness

1

of the dangers posed by the tank sump, the Motion for Summary Judgment [Dkt. No. 72] is DENIED in part as to Plaintiff's negligence claims. However, because there is no evidence in the summary judgment record of malicious, reckless, willful, wanton, or grossly negligent conduct by E-Z Mart, the Motion for Summary Judgment [Dkt. No. 72] is GRANTED in part as to punitive damages.

    I.    **Summary judgment standard**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes* v. *S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Posey* v. *Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt* v. *Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998). "[B]ecause this is a diversity case, we ascertain and apply Oklahoma law such that we reach the result that would be reached by an Oklahoma court." *Martinez* v. *Angel Expl., LLC*, 798 F.3d 968, 973 (10th Cir. 2015).

II.   **Undisputed Material Facts**

As of the date of the events giving rise to this case, August 28, 2015, Defendant E-Z Mart owned several convenience store gas stations, including Store 518 in Talihina, Oklahoma. Dkt. No. 72 Exhibit A Deposition Tr. of Steve Lanius. pg. 14. As of 2015, E-Z Mart utilized outside vendors, one of which was ProCore, to service its tanks and tank sumps on the premises, including Store 518. *Id*. Mr. Adams began working for ProCore in 2015. Dkt. No. 72 Ex. B. Tr. of Jerry Little. P. 22-24.  It is unclear from the record the extent of Mr. Adams' technical training to work on fuel pumps, but it appears undisputed that it was almost entirely on the job training from more experienced workers and not formal education programs. Dkt. No. 72 Exh. H, Tr. of Larry Colbert, p.72; Dkt. No. 77 p.9, ¶ 9.

Between December 31, 2014, and August 28, 2015, ProCore worked at Store 518 multiple times. On at least two of those occasions, Mr. Adams responded to these work orders. Dkt. No. 72 Exh. E, Tr. of Carter pg. 38, Exh. H pg. 39-40. However, the parties dispute whether he

3

encountered the underground parts of the sump or worked exclusively above the surface. Dkt. No. 77-5 Tr. of Lary Colbert, 89-90. Prior to the events giving rise to this litigation, on May 28, 2015, Mr. Adams responded to a work order at the E-Z Mart on behalf of ProCore. On this occasion, he was accompanied by his supervisor, Lary Colbert, and they both pumped water out of the sump that is the subject of the present litigation. Dkt. No. 72 Exh. H, Tr. Of Colbert pgs. 29-30. The tank sump at E-Z Mart was 71 inches deep, while most sumps are typically only 3-4 feet deep. Dkt. No. 77-8, Tr. of Brett Smith pg. 28. Because of how deep this sump was, Larry Colbert advised Mr. Adams not to enter the sump alone or said words to this effect[1]. Dkt. No. 77-8 pgs. 45-46.

On August 28, 2015, E-Z Mart's automatic tank gauge alarm for the fuel pumps activated multiple times, prompting the store to contact Brett Smith at ProCore. Dkt. No. 72 Ex. H, Tr. of Colbert 45-46, Tr. of Carter Ex. E, p. 38, Tr. of Smith Ex. I, p. 33. Brett Smith assigned the project to Lonnie Adams, who, because his own work truck was inoperable, borrowed Mr. Smith's truck. Dkt. No. 72 Ex. M pg. 48. Before arriving at E-Z Mart, Mr. Adams stopped at the Handy Stop convenience store in McAlester, where his wife worked, to get breakfast. Dkt. No 72 Ex. N, pg. 58-59. After leaving, Mr. Adams arrived at E-Z Mart a little before eleven in the morning and spoke to the store manager Janie Carter. Dkt. No. 72 Exh. E., pg. 39-40; Dkt. No. 77 at Exh. L. Mr. Adams bagged the pump handles and attempted to fix the issue from the electrical closet inside the store. Dkt. No. 72 at E., 39-41. Then Mr. Adams leaves the store and drives the ProCore truck over to the tank sump. *Id*. Mr. Adams truck was blocking the truck's view of him and the sump at

---

[1] While the Plaintiff purports to dispute this fact in part, she does not meaningfully contradict the fact that this sentiment was expressed by Mr. Colbert to Mr. Adams. Instead, she points out that "ProCore principals and experts agree that, without an OSHA- required permit disclosing the nature and extent of the dangers present in the sump, a less-experienced worker like Lonnie would be unable to appreciate the risks of those dangers for himself." Dkt. No. 77 at ¶ 15. Thus, while Plaintiff categorizes this fact as disputed, the fact that some warning was conveyed is not meaningfully challenged. Though the court referencing this statement should not be taken as an endorsement that this statement is a substitute for the OSHA-required permit.

this time; therefore, the record becomes a little unclear. At some point, E-Z Mart's cook came to check on Mr. Adams and reported that he was working outside. Dkt. No. 72 Ex. E. 46-47. Eventually, around 4:00 p.m. Ms. Carter received a call from Brett Smith asking after Mr. Adams. After this, the E-Z Mart cook checked on Mr. Adams, and approximately twenty minutes later, Ms. Carter went to check on Mr. Adams in the tank sump; he was unresponsive. *Id*. at 50-55.

Ms. Carter then called 911. Emergency responders arrived and declared Mr. Adams dead, removed him from the tank, and transferred him to Burkhart Funeral Home overnight. Later, he was transferred to the Medical Examiner's office, where the Office of the Chief Medical Examiner for the State of Oklahoma performed an Autopsy on August 29, 2015. Dkt. No. 72 Exh. Q, Report of Investigation by Medical Examiner. The Medical examiner lists the following "Pathologic Diagnoses": Asphyxia due to vitiated atmosphere, Methamphetamine and Ethanol Toxicity, Bilateral Congested Edematous and Hemorrhagic Lungs, Hepatic Steatosis, and Early decomposition. *Id* at 2. The Plaintiff contests the findings regarding methamphetamine and alcohol. She points out that the Medical Examiner failed to distinguish between dextromethamphetamine and levomethamphetamine. Dkt. No. 51-4 at p. 4. The former is a Schedule 2 drug, and the latter is found in some over the counter decongestants. Dkt. No. 77-16, Exh. P, Dkt. No. 77-17 Exh. Q. Additionally, the Plaintiff urges that the ethyl alcohol detected in Mr. Adams blood can only reasonably have come from the absorption of the gasoline in the tank and was not a result of the ingestion of alcohol. *Id*. Furthermore, Plaintiff points out that the postmortem samples cannot approximate the exact dose of a drug due to postmortem redistribution and other factors. Before this incident, the Plaintiff, Ashley Adams, testified that her husband had used methamphetamine, but not regularly, and in the years before his death, she reports he used it at most once or twice a year. Dkt. No. 77 Exh. N, Tr. of Adams, pg. 35-41.

After Mr. Adams' death, the Occupational Safety and Health Administration ("OSHA") investigated E-Z Mart and ProCore. It cited E-Z Mart for failing to label a permit-required confined space properly and not informing employees and contractors of the risk of falls and hazardous atmospheres. Dkt. No. 77 at Exh. 8. Additionally, ProCore, Mr. Adams employer, was investigated and fined for (1) failure to evaluate the underground tank sump to determine if it was a permit required confined space, (2) failure to develop and implement a permit space entry program, (3) failure to identify and evaluate hazards of permit required confined spaces before allowing its employee to enter, (4) failure to provide training on permit required confined spaces before allowing or tasking employees to conduct work on a permit required confined space., (5) failure of Mr. Adams to lock out and tag the energized circuits in and to the tank sump, and (6) failure of ProCore to timely report Mr. Adam's death. Dkt. No. 72 Exh. H Transcript of Colbert at p. 68-73.

**III.     Analysis**

To establish a claim of negligence under Oklahoma law, a plaintiff must show: "(1) existence of a duty on the part of the defendant to protect plaintiff from injury; (2) defendant's breach of the duty; and (3) injury to plaintiff proximately resulting therefrom." *Scott* v. *Archon Grp., L.P.*, 191 P.3d 1207, 1211 (Okla. 2008). "The threshold requirement in any case based on negligence is to establish the existence of a duty, for there can be no negligence in the absence of a defendant's duty to the plaintiff." *Id*. The Plaintiff sued E-Z Mart under several different theories that all sound in negligence.  E-Z Mart argues that it is entitled to summary judgment as to all of these claims. First, E-Z Mart asserts that the Plaintiff's negligence per se claim fails as a matter of law because Mr. Adams is not in the class of persons the relevant OSHA regulations were designed to protect, and even if he were, E-Z Mart argues its violation of these regulations did not cause his death. Next, Defendant claims that, as a landowner, it did not owe Mr. Adams a duty because it did not

direct or control his work and the sump was an open and obvious hazard. Finally, E-Z Mart argues that it does not owe a duty to protect the employee of an independent contractor from an inherently dangerous activity. In addition to arguing that it is not liable as a matter of law, Defendant E-Z Mart argues that summary judgment is warranted on the issue of punitive damages, and the issue should not be put to the jury.

> **A. Plaintiff was in the class of persons whom 29 CFR § 1910.146 is intended to protect, and the proximate cause of the decedent's death is a disputed fact**

As the employee of a contractor, Mr. Adams was in the class of persons OSHA confined space safety regulations intend to protect. Additionally, there are disputes of fact regarding the extent to which different factors, such as the failure to abide by the OSHA regulation, were the proximate cause of Mr. Adams' death. Thus, summary judgment is not warranted on Plaintiff's negligence per se claim.

Under Oklahoma law, a plaintiff pursuing a negligence per se claim must show that "1) the injury was caused by the [statutory] violation; 2) the injury was of a type intended to be prevented by the statute; and 3) the injured party was of the class meant to be protected by the statute." *Busby v. Quail Creek Golf and County Club*, 885 P.2d 1326, 1330 (Okla. 1994). Here, the Plaintiff rests her negligence per se claim on the failure to comply with OSHA safety regulations, specifically 29 CFR § 1910.146(c) (1) & (2), the regulations governing permit-required confined spaces that OSHA cited E-Z Mart for violating. These regulations specifically contemplate that a host employer must inform contract workers of the permit required for confined spaces. Pursuant to 29 CFR § 1910.146 (c)(8), a host employer is required to inform contractors that the workplace contains permit spaces and coordinate with the contractor to identify specific hazards and manage implementation of the requisite safety protocols. It is undisputed between the parties that following this accident, OSHA investigated E-Z Mart and issued two citations for failure to determine the

7

presence of a confined space and for failure to mark the tank sump as a confined space. Therefore, because the regulatory scheme at issue mandates protections for employees of contractors, Mr. Adams, as the employee of a contractor, is clearly in the category of persons whom the regulation is meant to protect.

The Defendant argues that Mr. Adams should nevertheless be excluded from protection because he was intoxicated. Dkt. No. 72 at 15 citing *McGee* v. *El Patio, LLC*, 2023 OK 14, 524 P.3d 1283 (The Oklahoma Supreme Court determined that a drunk driver was not a member of the class of people that a Dram Shop law was intended to protect for purposes of a negligence per se cause of action against the bar where he became voluntarily intoxicated.) This argument fails for two reasons. First, while the Medical Examiner's report states that methamphetamine and some form of alcohol were found in Mr. Adams' body, the extent to which these substances actually intoxicated him is very clearly a disputed fact based on the record. Therefore, because there are disputed facts as to whether Mr. Adams was even intoxicated, summary judgment is not warranted on these grounds. Second, even if the intoxication question was clear, the court is not convinced that the dram shop law is analogous to the relevant OSHA provisions for these purposes.

Finally, E-Z Mart argues that because the OSHA confined space regulations imposed coextensive duties on Mr. Adams and ProCore, some of which were also not met, that any violation of a related duty by E-Z Mart did not cause Mr. Adams death. The record shows that both E-Z Mart and ProCore were cited by OSHA. However, the fact that both companies violated safety regulations does not foreclose liability against E-Z Mart for its own contribution to the decedent's harm, and the extent to which each company's failures contributed to the incident is a question of fact. Thus, because there are material disputes of fact, the court cannot grant summary judgment on the Plaintiff's negligence per se claim.

### B. E-Z Mart is not Entitled to Summary Judgment Pursuant to the Open and Obvious Doctrine

In the light most favorable to the Plaintiff, Mr. Adams was required to enter the tank sump to fulfill his job duties. Additionally, the record reflects disputed facts regarding the open and obvious nature of the risks posed by the sump. Therefore, summary judgment is not warranted based on the open and obvious hazard defense. The Oklahoma Supreme Court has held that a property owner, as an invitor, owes the highest duty of care to an invitee. *Pickens* v. *Tulsa Metro. Ministry*, 1997 OK 152, ¶ 10, 951 P.2d 1079, 1084. A landowner must "exercise reasonable care to keep the premises in a reasonably safe condition and to warn [an invitee] of conditions which [are] in the nature of hidden dangers, traps, snares or pitfalls." *Martin* v. *Aramark Services, Inc.*, 2004 OK 38, ¶ 5, 92 P.3d 96, 97. But, even for invitees, a property owner has no duty to render safe an "open and obvious" danger. *Martinez* v. *Angel Expl.*, 798 F.3d 968, 975 (10th Cir. 2015). Traditionally, Oklahoma courts have held that invitors "need not guard the invitee against dangers so apparent and readily observable that the conditions should be discovered." *Sholer,* 256 P.3d at 43. A danger is considered open and obvious when "'under similar or like circumstances an ordinary prudent person would have been able to see the defect in time to avoid being injured.'" *Martinez,* 798 F.3d 968 (quoting *Scott*, 191 P.3d at 1212).

Despite this longstanding rule, in *Wood* v. *Mercedes-Benz*, the Oklahoma Supreme Court held that the "open and obvious doctrine is not absolute." 336 P.3d 457. In *Wood,* the Court held that the landowner had a duty to protect an independent contractor from an open and obvious hazard when the contractor was required to encounter the hazard to perform her job. 2014 OK 68 p. 5 n. 6. Later, the Oklahoma Court of Civil Appeals clarified that *Wood* did not completely discard the open and obvious defense. Instead, it created a narrow carve out wherein the open and obvious defense will not apply where "the plaintiff must take the risk to fulfill an obligation or to carry out

9

employment obligations," or where "the invitee is forced, as a practical matter, to encounter a known or obvious risk in order to perform his job." *Norton* v. *Spring Operating Co.*, 2020 OK CIV APP 18, ¶ 22, 466 P.3d 598, 605.

Here, it is undisputed that Mr. Adams, as the employee of a contractor, enjoyed the status of an invitee while he was working at the E-Z Mart. E-Z Mart argues that Mr. Adams, unlike the Plaintiff in *Wood*, was not required to enter the sump to perform his job duties and should have either waited until the sump could be made safe or notified E-Z Mart that the situation was too dangerous for him to complete the job. Based on the record before the court, it is disputed whether the sump posed an open and obvious hazard and whether Mr. Adams fully understood the risks posed by the sump and could avoid the hazard. Therefore, in the light most favorable to the Plaintiff, summary judgment should not be granted based on the open and obvious doctrine.

While the Defendant here argues that *Norton* is more applicable, the *Norton* court emphasized the plaintiff's ability to exit the situation until it could be made safe when distinguishing his circumstances from those of the plaintiff in *Wood*. In *Norton* the Court of Civil Appeals explained that *Wood* created a carve out for an invitee who "was present to fulfill his or her employer's contractual duty to provide service for the owner of the premises such that the invitee's presence and exposure to the dangerous condition was required to further a purpose of the owner of the premises." 2014 OK 68, ¶ 5 n.6, 336 P.3d 457. In finding that the plaintiff in *Norton* did not fall within this exception *Wood*, the Oklahoma Court of Civil Appeals relies heavily on the distinction that the *Norton* plaintiff was the defendant landowners' customer and had the authority to avoid the danger without reprisal from his employer. *Norton* v. *Spring Operating Co.*, 2020 OK CIV APP 18, ¶ 31, 466 P.3d 598, 607. Thus, according to the Court of Civil Appeals, the *Norton* plaintiff was not there to further the purposes of the owner of the premises, like the plaintiff in

*Wood,* and could have left the defendant's premises and only returned once the danger was resolved.

E-Z Mart contends that Mr. Adams not only had a choice but also an affirmative duty to avoid the danger posed by the sump. Dkt. No. 72 at 24. The Defendant argues essentially that Mr. Adams, upon encountering the sump, should not have continued the job until it was safe to do so. Dkt. No. 72 at 24. However, unlike the plaintiff in *Norton*, it is undisputed that Mr. Adams was not present as an customer of E-Z Mart but rather, was there "to fulfill his [] employer's contractual duty to provide service for the owner of the premises" 2014 OK 68, ¶ 5 n.6, 336 P.3d 457. This status as an employee of a contractor rather than a customer of the landowner makes Mr. Adams more like the plaintiff in *Wood* than the plaintiff in *Norton*.

Additionally, the deposition evidence relied on by the Defendant does not, in the light most favorable to the Plaintiff, convince the court that Mr. Adams had the kind of autonomy to refuse to enter the sump or otherwise avoid a dangerous situation that is contemplated by the court in *Norton*. E-Z Mart references Brett Smith's (Mr. Adam's direct supervisor) testimony that Mr. Adams had a company credit card that he could use to get what he needed (i.e., ladders, wrenches, tools, and parts) to complete a job, implying that he could have used said card to acquire additional tools to secure his safety at E-Z Mart. *See* Dkt. No. 72-9 at 38-39. Additionally, Mr. Smith points to the fact that technicians, like Mr Adams, were trained or at least told to call supervisors if they encountered unusual issues. However, when asked, "If a technician ever arrived at a work site and felt that the site was too dangerous to perform the work, was there a standard procedure or protocol?" he replied that "That had never happened" and went on to add that he would be able to answer questions on how to complete a task, but he does not clearly say that Mr. Adams had the

11

authority to leave and come back or delay work until the situation could be made safe. Dkt. No. 72-9 at 39 ln. 11-15.

Being able to ask a supervisor to consult on a tricky or dangerous project is not the same kind of autonomy described in *Norton,* where the employees were given a procedure for leaving a notice at the hazardous location, and the company would "get a hold of the producer and have the producer fix the problem" before they returned. *Norton* v. *Spring Operating Co.*, 2020 OK CIV APP 18, ¶ 28, 466 P.3d 598, 607. In the present case, it is not clear whether Mr. Adams was fully aware of the warnings and various alternative courses of action potentially available to him. Thus, because there is material disputed facts regarding the autonomy Mr. Adams had to decline to continue working, we cannot say that, as a matter of law, in light of *Wood*, the open and obvious doctrine forecloses the Plaintiff's premises liability claim. Further, because Mr. Adams is described consistently in the record as a less experienced worker, it is not clear whether he could have appreciated the dangers posed by the sump. Thus, in keeping with case law, because reasonable minds could differ as to whether the danger was open and obvious, this too is a question of fact for the jury. *Zagal* v. *Truckstops Corp. of Am.*, 1997 OK 75, ¶ 10, 948 P.2d 273, 275.

### C. E-Z Mart is not Entitled to Summary Judgment based on Mr. Adams' Status as an Independent Contractor

Defendant also argues that it is exempt from the duties typically owed to invitees because Mr. Adams was an independent contractor, E-Z Mart did not direct his work, and the hazards that caused the injury are inherent to the work he was hired to perform. Dkt. No. 72 citing, *Bird* v. *Pruett's Food, Inc.*, 2023 OK 92, ¶ 16, 536 P.3d 578, 582. However, even if we were to assume that E-Z Mart did not direct Mr. Adams work and the sump was an inherent job hazard, the present case is distinguishable from *Bird*. In *Bird* the court concluded that "Pruett's is not liable for harm

that resulted from the ladder it provided to Bird because Bird was aware of the allegedly dangerous condition of the ladder." *Bird* v. *Pruett's Food, Inc.*, 2023 OK 92, ¶ 16, 536 P.3d 578, 582.

Here, the facts are disputed as to whether Mr. Adams knew about the potential hazards posed by the sump. While the Defendant points to the supposed warning from his supervisor, the full extent of the knowledge Mr. Adams gleaned from his prior work on this sump is disputed. Dkt. No. 77 at 8 ¶¶ 9, 11. During prior work at the E-Z Mart, Mr. Adams had only worked above ground, not beneath. Mr. Adams was described as a less experienced worker, which would indicate that he was not fully aware of the dangers posed by this work environment. Additionally, the Plaintiff also alleges that the failure to comply with OSHA regulations requiring permit entry to the space in the tank meant that Mr. Adams was improperly warned of the permit-required confined space. Thus, because there are disputed facts regarding Mr. Adams knowledge of the hazards posed by working on this fuel tank, summary judgment is not warranted.

**D.  Disputes of Fact Exist Regarding Whether Mr. Adams' Work was Inherently Dangerous**

E-Z Mart argues next that, as a landowner, it does not have a duty to protect the employees of independent contractors from the hazards encountered while performing inherently dangerous activities. Dkt. No. 72 at 26, citing *Young* v. *Bob Howard Automotive, Inc.*, 2002 OK Civ App. 80, P 13, 52 P. 3d 1045, 1049. Under such exception, a company "who performs work through an independent contractor is not liable for damages to third persons caused by the negligence of the contractor except where the work is inherently dangerous or unlawful or where the employer owes a contractual or defined legal duty to the injured party in the performance of the work." *Young*, 52 P.3d at 1050 (citing *Williamson* v. *Fowler Toyota, Inc.*, 956 P.2d 858, 860 (Okla.1998)). The Defendant argues that the work on the sump was inherently dangerous due to the exposure to gasoline vapor and electrical hazards. E-Z Mart's reliance on *Young* is misguided. The "inherently

13

dangerous exception ... does not extend to employees of the independent contractor," making it inapplicable to the case at bar. *Young*, 52 P.3d at 1051.

Additionally, the inherently dangerous activity doctrine includes work "which from its description is 'inherently' or 'intrinsically dangerous,' but also work which will in the ordinary course of events cause injury to others if certain precautions are omitted, but which may as a general rule be executed with safety if those precautions are taken." *Hudgens* v. *Cook Industries, Inc.*, 1973 OK 145, ¶11, 521 P.2d 813 (emphasis added) (citing *Burke* v. *Thomas*, 1957 OK 154, ¶26, 313 P.2d 1082, 1088). Based on the record before the court, there are disputed facts as to whether Mr. Adams' job constituted an inherently dangerous activity under Oklahoma law.

### E.	Punitive Damages

Under Oklahoma law, punitive damages are only available in actions involving fraud, oppression, malice, or gross negligence and are generally a question for the fact-finding jury. *See Sinclair*, 2020 WL 3965010, at *5 (citing *Fuller* v. *Neundorf*, 278 P.2d 836, 839 (Okla. 1954)). Punitive damages require a plaintiff to prove by clear and convincing evidence that the defendant engaged in a reckless disregard for the rights of others or acted intentionally and with malice towards others. *McGinley* v. *Am. Dump Trucks, Inc.*, 2021 WL 4517687, at *4 (W.D. Okla. Sept. 30, 2021) (quoting Okla. Stat. tit. 23, § 9.1.) The Oklahoma Supreme Court explained that "[p]unitive damages are allowable where there is evidence of reckless and wanton disregard of another's rights from which malice and evil intent may be inferred." *Graham* v. *Keuchel*, 847 P.2d 342, 363–64 (Okla. 1993). Whether a defendant's conduct was sufficiently reckless to permit punishment by an award of punitive damages is generally a jury question. *See State ex rel. Pollution Control Coordinating Bd. v. Kerr-McGee Corp.*, 619 P.2d 858, 865-66 (Okla. 1980); *Myers*, 609 F. Supp. 3d at 1238. But "[o]nly where there is evidence in the record supporting an

14

inference of gross negligence or reckless disregard and/or indifference for the safety of others must the issue of punitive damages be submitted to the jury." *Hinds* v. *Warren Transp., Inc.*, 882 P.2d 1099, 1102 (Okla. Civ. App. 1994). Reckless disregard is established by showing that the defendant "was either aware, or did not care, that there was a substantial and unnecessary risk that [his] conduct would cause serious injury to others." *Gowens* v. *Barstow*, 364 P.3d 644, 652 (Okla. 2015) (internal quotation marks omitted). "'Reckless disregard' is not to be confused with inadvertent conduct." *Thiry* v. *Armstrong World Indus.*, 661 P.2d 515, 518 (Okla. 1983).

Plaintiff alleges that the Defendant acted with recklessness and careless disregard, justifying punitive damages. Dkt. No. 2. The record on summary judgment does not contain any evidence suggesting that E-Z Mart acted with gross negligence or a reckless disregard for others. Plaintiff argues that the failure to comply with OSHA safety regulations is evidence of a reckless disregard for safety, pointing to the fact that the store "knew that OSHA regulations required it to take precautions to mitigate the dangers posed by confined spaces". Dkt. No. 77 at 30. However, the evidence Plaintiff points to only discusses general knowledge of confined space requirements and supports, at best, a negligent failure to inspect. It does not suggest that the store knew about specific issues with this sump and willfully failed comply with the statute. *See* Dkt. No. 77 at 30. Plaintiff references the regulation, 29 CFR 1910.146, for the broad proposition that the store had a duty to mark confined spaces. Then it cites deposition testimony where Steve Lanius states broadly that the store had a duty to be aware of and follow relevant safety regulations. Dkt. No. 77-10. However, there were no prior OSHA violations or any other conduct or circumstances suggesting that the failure to adequately place the OSHA-required signage was anything other than an inadvertent error. Furthermore, violation of government safety regulations, even if willful and knowing, does not rise to the level of an intentional tort or an actual intent to injure. *Price* v.

*Howard*, 2010 OK 26, ¶ 16, 236 P.3d 82, 90, as corrected (Apr. 1, 2010), as corrected (June 14, 2010).  The summary-judgment record does not contain facts from which a reasonable jury could conclude that Defendant's actions were malicious, reckless, willful, wanton, or grossly negligent, and therefore the Defendant's Motion for Summary Judgment as to the question of punitive damages is hereby GRANTED.

## CONCLUSION

For the foregoing reasons, Defendant E-Z Mart Stores, Inc.'s Motion for Summary Judgment and Brief in Support [Dkt. No. 72] is DENIED in part and GRANTED as to the issue of punitive damages.

Dated this 13th day of February, 2026.

/s/ Ronald A. White
Ronald A. White
United States District Judge
Eastern District of Oklahoma